IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**CHASTITY NOLLEY, Individually and on
Behalf of All Others Similarly Situated
PLAINTIFF**

vs.                                          Case No.

**OSP, INC., KEITH KRUEGER, LEON
PINE RIDGE, LLC, and ERIC LEON
DEFENDANTS**

### ORIGINAL COMPLAINT AND DEMAND FOR JURY TRIAL — COLLECTIVE ACTION

Plaintiff, Chastity Nolley ("Plaintiff"), individually and on behalf of all others similarly situated, by and through undersigned counsel, for her Original Complaint—Collective Action against OSP, Inc., Keith Krueger, Leon Pine Ridge, LLC, and Eric Leon ("Defendant"), states and alleges as follows:

## I.   PRELIMINARY STATEMENTS

1.    This is a collective action brought by Plaintiff, individually and on behalf of all others similarly situated, against Defendant for violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (the "FLSA") and the Florida Minimum Wage Act, Fla. Stat. Ann § 448.100 and Fla. Const. Art. X § 24 (collectively "FMWA").

2. Plaintiff seeks declaratory judgment, monetary damages, liquidated damages, costs, and a reasonable attorneys' fee, as a result of Defendant's policy and practice of failing to pay Plaintiff sufficient wages under the FLSA and the FMWA within the applicable statutory limitations period.

3. Upon information and belief, within the three years prior to the filing of the Complaint, Defendant has willfully and intentionally committed violations of the FLSA as described, *infra*.

4. Upon information and belief, within the five years prior to the filing of the Complaint, Defendant has willfully and intentionally committed violations of the FMWA as described, *infra*.

## II.  JURISDICTION AND VENUE

5. The United States District Court for the Middle District of Florida has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

6. This Complaint also alleges FMWA violations, which arise out of the same set of operative facts as the federal cause of action; accordingly, this Court has supplemental jurisdiction over Plaintiff's FMWA claims pursuant to 28 U.S.C. § 1367(a).

7. Defendant conducts business within the State of Florida.

8.     Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Florida has personal jurisdiction over Defendant, and Defendant therefore "resides" in Florida.

9.     A substantial part of the acts complained of herein were committed in and had their principal effect against Plaintiff within the Fort Myers Division of the Middle District of Florida. Therefore, venue is proper pursuant to 28 U.S.C. § 1391.

### III.   THE PARTIES

10.     Plaintiff is an individual and resident of Collier County.

11.     Separate Defendant OSP, Inc. ("OSP") is a domestic, for-profit corporation.

12.     OSP's registered agent for service of process is Matt Foreman at 5308 Spring Hill Drive, Spring Hill, Florida 34606.

13.     Separate Defendant Keith Krueger ("Krueger") is an individual and resident of Florida.

14.     Separate Defendant Leon Pine Ridge, LLC ("LPR"), is a domestic limited liability company.

15.     LPR's registered agent for service of process is Eric M. Leon at 14382 Tuscany Point Trail, Naples, Florida 34120.

16.     Separate Defendant Eric Leon ("Leon") is an individual and resident of Florida.

## IV.   FACTUAL ALLEGATIONS

17.    Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

18.    Krueger is a principal, director, officer, and/or owner OSP.

19.    Krueger, in his role as an operating employer of OSP, had the power to hire and fire Plaintiff, often exercised supervisory authority over Plaintiff's work, including the day-to-day job duties that Plaintiff's job entailed, determined her work schedule, and made decisions regarding Plaintiff's pay, or lack thereof.

20.    Krueger took an active role in operating OSP and in the management thereof.

21.    Leon is a principal, director, officer, and/or owner LPR.

22.    Leon, in his role as an operating employer of LPR, had the power to hire and fire Plaintiff, often exercised supervisory authority over Plaintiff's work, including the day-to-day job duties that Plaintiff's job entailed, determined her work schedule, and made decisions regarding Plaintiff's pay, or lack thereof.

23.    Leon took an active role in operating LPR and in the management thereof.

24.    Defendant owns and operates multiple Papa John's franchises in Florida, including the store at which Plaintiff worked.

25.     Upon information and belief, in 2021 Krueger and OSP sold the store at which Plaintiff worked to Leon and LPR. For a few months, all Defendants operated the store, and in August or September, Leon and LPR took over operations completely.

26.     Defendant's annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

27.     During each of the three years preceding the filing of this Complaint, Defendant employed at least two individuals who were engaged in interstate commerce or in the production of goods for interstate commerce, or had employees handling, selling, or otherwise working on goods or materials that had been moved in or produced for commerce by any person, such as vehicles, fuel and goods or materials typically used in the fast-food industry.

28.     At all material times, Defendant was an enterprise subject to the Florida Constitution's provision on minimum wages.

29.     Defendant employed Plaintiff within the three years preceding the filing of this lawsuit.

30.     Specifically, Defendant employed Plaintiff as an hourly-paid Delivery Driver from approximately February of 2021 until August of 2021.

31.    Defendant also employed other hourly-paid Delivery Drivers within the three years preceding the filing of this lawsuit.

32.    At all relevant times herein, Defendant directly hired Plaintiff and other Delivery Drivers to work on its behalf, paid them wages and benefits, controlled their work schedules, duties, protocols, applications, assignments and employment conditions, and kept at least some records regarding their employment.

33.    At all times material herein, Plaintiff has been entitled to the rights, protections and benefits provided under the FLSA and the FMWA.

34.    Defendant classified Plaintiff as nonexempt from the overtime provisions of the FLSA.

35.    Defendant also classified other Delivery Drivers as nonexempt from the overtime provisions of the FLSA.

36.    Upon information and belief, Defendant applies or causes to be applied substantially the same employment policies, practices, and procedures to all Delivery Drivers at all of their locations, including policies, practices, and procedures relating to payment of minimum wages and reimbursement of automobile expenses.

37.    Defendant is an "employer" within the meaning set forth in the FLSA and the FMWA, and was, at all times relevant to the allegations in this

Complaint, Plaintiff's employer, as well as the employer of the members of the proposed collective.

38.   Plaintiff and the other Delivery Drivers at Defendant's restaurants work "dual jobs." Specifically, they deliver food to Defendant's customers and receive tips, and they also work inside the store completing nontipped duties.

39.   Defendant paid Plaintiff and other Delivery Drivers a rate at or close to minimum wage per hour for work performed while in the store.

40.   Defendant paid Plaintiff and other Delivery Drivers less than minimum wage per hour for all hours worked outside of the restaurant making deliveries. In other words, Defendant takes advantage of the "tip credit" provision of the FLSA pursuant to 29 U.S.C. § 203(m) while Plaintiff and other Delivery Drivers are out making deliveries.

41.   Plaintiff and other Delivery Drivers would "clock out" from working inside the store and "clock in" as making deliveries when leaving the restaurant to make deliveries, thereby changing their hourly pay rate.

42.   Defendant requires Delivery Drivers to maintain and pay for operable, safe, and legally compliant automobiles to use in delivering Defendant's pizza and other food items.

43.   Defendant requires Delivery Drivers to incur and/or pay job-related expenses, including but not limited to automobile costs and

depreciation, gasoline expenses, automobile maintenance and parts, insurance, financing, cell phone costs, and other equipment necessary for delivery drivers to complete their job duties.

44.     Pursuant to such requirements, Plaintiff and other Delivery Drivers purchased gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, suffered automobile depreciation, paid for automobile financing, and incurred cell phone and data charges all for the primary benefit of Defendant.

45.     Defendant does not track Plaintiff's or other Delivery Drivers' actual expenses nor does Defendant keep records of all of those expenses.

46.     Defendant does not reimburse Plaintiff and other Delivery Drivers for their actual expenses.

47.     Defendant does not reimburse Plaintiff and other Delivery Drivers at the IRS standard business mileage rate.

48.     Defendant does not reimburse Plaintiff and other Delivery Drivers at a reasonable approximation of Delivery Drivers' expenses.

49.     For the majority of Plaintiff's employment, she and other Delivery Drivers were reimbursed at a flat rate per delivery at $1.20 per delivery.

50.     In August of 2021, Defendant began reimbursing Plaintiff and other Delivery Drivers at a rate of $0.30 per mile driven.

51.    According to the Internal Revenue Service, the standard mileage rate for the use of a car during the relevant time periods has been as follows:

2019:  58 cents/mile
2020:  57.5 cents/mile
2021:  56 cents/mile
2022:  58.5 cents/mile

52.    As a result of the automobile and other job-related expenses incurred by Plaintiff and other similarly situated Delivery Drivers, they were deprived of minimum wages guaranteed to them by the FLSA.

53.    Plaintiff worked at multiple Papa John's restaurants owned by Defendant and the policies were the same at all locations.

54.    At all relevant times, Defendant has applied the same pay policies, practices, and procedures to all Delivery Drivers at their stores.

55.    All of Defendant's Delivery Drivers were subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid less than the applicable minimum wage rate before deducting unreimbursed vehicle costs.

56.    Regardless of the precise amount of the per-delivery reimbursement at any given point in time, Defendant's reimbursement formula has resulted in an unreasonable underestimation of Delivery Drivers'

automobile expenses throughout the recovery period, causing systematic violations of the minimum wage laws.

57.    Defendant charges customers a delivery fee separate from the food charge, but the delivery charge is not paid to the driver per the Papa John's website (www.papajohns.com).

58.    Plaintiff generally completed approximately 2 to 4 delivery trips per hour while working as a Delivery Driver (averaging 3 deliveries per hour).

59.    The typical delivery trip was anywhere from 1 to 5 miles away from the restaurant. Plaintiff estimates that the average delivery trip was 3 miles away (6 miles roundtrip).

60.    Because Defendant paid Plaintiff and other Delivery Drivers a gross hourly wage at or around the applicable minimum wage, and because Plaintiff and other Delivery Drivers incurred unreimbursed automobile expenses and other job expenses, the Delivery Drivers "kicked back" to Defendant an amount sufficient to cause minimum wage violations. *See* 29 C.F.R. § 531.35.

61.    Thus, in 2021 while paying a flat rate reimbursement, Defendant under-reimbursed Plaintiff at an approximate rate of $0.36 per mile ($1.20 divided by 6 miles = $0.20 per mile, $0.36 less than the IRS standard mileage rate of $0.56 per mile).

62.    Thus, while making deliveries while reimbursed at a flat rate (assuming 3 deliveries per hour at 6 miles per delivery), Plaintiff has consistently "kicked back" to Defendant approximately $6.48 per hour ($0.36 per mile x 6 miles per delivery x 3 deliveries per hour).

63.    In 2021 while paying a $0.30 per mile reimbursement, Defendant under-reimbursed Plaintiff at a rate of $0.26 per mile (IRS standard mileage rate of $0.56 per mile minus the actual reimbursement rate of $0.30 per mile).

64.    Thus, while making deliveries while reimbursed per mile (assuming 3 deliveries per hour at 6 miles per delivery), Plaintiff has consistently "kicked back" to Defendant approximately $4.68 per hour ($0.26 per mile x 6 miles per delivery x 3 deliveries per hour).

65.    Plaintiff occasionally worked hours over 40 in a week, and in these weeks she did not receive a sufficient overtime premium because of the unreimbursed mileage expenses.

66.    Other Delivery Drivers also occasionally worked over 40 hours in a week and also incurred overtime violations due to the unreimbursed mileage expenses.

67.    Defendant knew or should have known that it was not paying Plaintiff and other Delivery Drivers sufficient minimum wages and overtime premiums.

68.     Upon information and belief, Defendant failed to pay Plaintiff all of the tips that she earned.

69.     20 U.S.C. § 203(m)(2)(B) states, "An employer may not keep tips received by its employees for any purposes."

70.     Defendant has willfully failed to pay minimum wage, overtime premiums and all earned tips to Plaintiff and similarly situated Delivery Drivers.

71.     In 2021, Plaintiff took a leave of absence from work. Defendant encouraged her to return to work when she could.

72.     Upon information and belief, Defendants learned in January of 2022 that the instant lawsuit was pending.

73.     In February of 2022, Plaintiff contacted Defendants to return to her former position and was told that she was listed as "unhireable."

74.     Upon information and belief, Defendant refused to allow Plaintiff to return to work in retaliation for asserting her rights under the FLSA.

75.     Defendant knew or should reckless disregard for whether its actions violated the FLSA.

76.     Plaintiff has complied with pre-suit notice (if applicable), and all other conditions precedent to this action have been performed or waived. *See* Plaintiff's Demand letter attached as Exhibit "A."

## V.    REPRESENTATIVE ACTION ALLEGATIONS

77.    Plaintiff repeats and realleges all previous paragraphs of this Complaint as though fully incorporated in this section.

78.    Plaintiff brings her claims for relief for violation of the FLSA as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b), on behalf of all persons who were, are or will be employed by Defendant as similarly situated employees at any time within the applicable statute of limitations period, who are entitled to payment of the following types of damages:

A.    Minimum wages for all hours worked;

B.    Overtime premiums for all hours worked for Defendant in excess of forty each week;

C.    Liquidated damages; and

D.    Attorney's fees and costs.

79.    Plaintiff proposes the following collective under the FLSA:

**All Delivery Drivers in the last three years.**

80.    In conformity with the requirements of FLSA Section 16(b), Plaintiff has filed or will soon file a written Consent to Join this lawsuit.

81.    The relevant time period dates back three years from the date on which Plaintiff's Original Complaint—Collective Action was filed herein and continues forward through the date of judgment pursuant to 29 U.S.C. § 255(a), except as set forth herein below.

82.    The members of the proposed FLSA collective are similarly situated in that they share these traits:

A.    They were classified by Defendant as nonexempt from the minimum wage and overtime requirements of the FLSA;

B.    They had substantially similar job duties and requirements;

C.    They were required by Defendant to incur expenses to maintain vehicles for delivery of Defendant's products;

D.    They were subject to Defendant's common policy of not reimbursing Delivery Drivers for automobile expenses related to making deliveries for Defendant's restaurants;

E.    They did not receive a lawful minimum wage or overtime premium.

83.    Plaintiff's claims are essentially the same as those of the putative collective.

84.    Defendant's unlawful conduct is pursuant to a corporate policy or practice.

85.    Plaintiff is unable to state the exact number of potential members of the FLSA collective but believes that the collective exceeds one hundred (100) persons.

86.    Defendant can readily identify the members of the collective, who are a certain portion of the current and former employees of Defendant.

87.     The names, addresses and cell phone numbers of the FLSA collective action plaintiffs are available from Defendant, and a Court-approved Notice should be provided to the FLSA collective action plaintiffs via text message, email, and first class mail to their last known physical and electronic mailing addresses as soon as possible, together with other documents and information descriptive of Plaintiff's FLSA claim.

## VI.     FIRST CAUSE OF ACTION
### (Individual Claim for Violation of the FLSA—Unpaid Wages)

88.     Plaintiff repeats and realleges paragraphs 1 through 87 of this Complaint as though fully incorporated in this section.

89.     Plaintiff asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

90.     At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the FLSA, 29 U.S.C. § 203.

91.     At all relevant times, Defendant has been, and continues to be, an enterprise engaged in commerce within the meaning of the FLSA, 29 U.S.C. § 203.

92.     29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x regular wages for all hours worked over 40 each

week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

93.     During the period relevant to this lawsuit, Defendant classified Plaintiff as nonexempt from the overtime requirements of the FLSA.

94.     Despite the entitlement of Plaintiff to lawful overtime wages under the FLSA, Defendant failed to pay Plaintiff lawful overtime wages for all hours worked over forty each week.

95.     Defendant failed to pay Plaintiff a lawful minimum wage for all hours worked.

96.     Defendant failed to pay Plaintiff all tips earned.

97.     Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

98.     By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

## VII.   SECOND CAUSE OF ACTION
### (Collective Action Claim for Violation of the FLSA—Unpaid Wages)

99.     Plaintiff repeats and realleges paragraphs 1 through 98 of this Complaint as though fully incorporated in this section.

100.   Plaintiff, individually and on behalf of all others similarly situated, asserts this claim for damages and declaratory relief pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*

101.   At all relevant times, Defendant has been, and continues to be, an "employer" of Plaintiff and all those similarly situated within the meaning of the FLSA, 29 U.S.C. § 203.

102.   29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to 40 each week and to pay 1.5x regular wages for all hours worked over 40 each week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

103.   During the period relevant to this lawsuit, Defendant classified Plaintiff and all others similarly situated as nonexempt from the overtime requirements of the FLSA.

104.   Despite the entitlement of Plaintiff and all others similarly situated to lawful overtime wages under the FLSA, Defendant failed to pay Plaintiff and all others similarly situated lawful overtime wages for all hours worked over forty each week.

105.   Defendant failed to pay Plaintiff and all others similarly situated a lawful minimum wage for all hours worked.

106.   Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

107.   By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff and all others similarly situated for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

## VIII. THIRD CAUSE OF ACTION
### (Individual Claim for Violation of the FMWA—Unpaid Wages)

108.   Plaintiff repeats and realleges paragraphs 1 through 107 of this Complaint as though fully incorporated in this section.

109.   Plaintiff asserts this claim for damages and declaratory relief pursuant to the Florida Minimum Wage Act and the Florida Constitution.

110.   At all relevant times, Defendant was Plaintiff's "employer" within the meaning of the FMWA.

111.   Fla. Stat. Ann. § 448.110 requires employers to pay employees a minimum wage as published by the Department of Revenue and the Department of Economic Opportunity.

112.   Defendant failed to pay Plaintiff a lawful minimum wage for all hours worked.

113.   Defendant's conduct and practices, as described above, were willful, intentional, unreasonable, arbitrary, and in bad faith.

114.   By reason of the unlawful acts alleged herein, Defendant is liable to Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three years prior to the filing of this Complaint.

### IX.   FOURTH CAUSE OF ACTION
### (Individual Claim for Violation of the Anti-Retaliation Provisions of the FLSA)

115.   Plaintiff repeats and realleges paragraphs 1 through 114 of this Complaint as though fully incorporated in this section.

116.   Defendant's termination of Phipps was a direct and willful violation of the FLSA's anti-retaliation provision at subsection 215(a)(3), which forbids employers from firing or otherwise taking retaliatory action against individuals who have asserted their rights under the FLSA.

117.   Pursuant to the FLSA, employers may not "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA], or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

118.   Plaintiff engaged in protected activity by instigating this lawsuit.

119. Defendant refused to allow Plaintiff to return to work and marked her as "unhireable" in clear acts of retaliation against Plaintiff solely due to this lawsuit.

120. Plaintiff should be reinstated to her employment and compensated for lost income due to Defendant's unlawful retaliation, and should be compensated for any pain, suffering, or loss of face suffered as a result of Defendant's actions.

121. Further, punitive damages should be assessed against Defendant for its blatant and willful actions to retaliate against Plaintiff for her assertion of her rights under the FLSA in direct and intentional violation of the anti-retaliation provisions of the FLSA.

## X.   PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Chastity Nolley, individually and on behalf of all others similarly situated, respectfully prays that Defendant be summoned to appear and to answer herein and for declaratory relief and damages as follows:

A.    That Defendant be required to account to Plaintiff, the collective members, and the Court for all of the hours worked by Plaintiff and the collective members and all monies paid to them;

B.      Certification of a collective under Section 216 of the FLSA of all individuals similarly situated, as further defined in any motion for the same;

C.      A declaratory judgment that Defendant's practices alleged herein violate the FLSA, the FMWA and their related regulations;

D.      Judgment for damages owed to Plaintiff and others similarly situated under the FLSA, the FMWA and their related regulations;

E.      Judgment for liquidated damages owed to Plaintiff and others similarly situated pursuant to the FLSA, the FMWA and their related regulations;

F.      Judgment for compensatory damages owed to Plaintiff under 29 U.S.C. § 216(b);

G.      Reinstatement of Plaintiff to her former employment under 29 U.S.C. §  216(b);

H.      For a reasonable attorneys' fee, costs, and pre-judgment interest; and

I.      Such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable against Defendant.

Respectfully submitted this ___21st___ day of April, 2022.

**CHASTITY NOLLEY, Individually
and on Behalf of All Others
Similarly Situated, PLAINTIFF**

THE LEACH FIRM, PA
Wells Fargo Building
631 South Orlando Avenue, Suite 300
Winter Park, Florida 32789
Telephone: (844) 722-7567

*/s/* Carlos Leach
Carlos Leach – LEAD COUNSEL
Fla. Bar No. 0540021
cleach@theleachfirm.com

SANFORD LAW FIRM, PLLC
Kirkpatrick Plaza
10800 Financial Centre Pkwy, Suite 510
Little Rock, Arkansas 72211
Telephone: (501) 221-0088
Facsimile: (888) 787-2040

*/s/ Josh Sanford*
Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com
PHV forthcoming